# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | Case No. 23-40885-EDK |
| SCOTT ANDREWS, | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| SCOTT ANDREWS, | ) | Adversary Proceeding |
| | ) | No. 24-4011 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EQUITY HOLDING CORP., | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## MEMORANDUM OF DECISION

Before the Court, after trial, is the one remaining count for unjust enrichment contained in

the complaint filed by Scott Andrews, the plaintiff in this adversary proceeding and the debtor in

the underlying Chapter 13 bankruptcy case (the "Debtor"), against Equity Holding Corp.

("Equity").  Through the complaint, the Debtor seeks damages for the payment of expenses related

to the Debtor's residence, which the Debtor does not own.  In reaching its decision, this Court

must first determine whether a claim for unjust enrichment is available to the Debtor and, if so,

whether the Debtor has demonstrated entitlement to relief.  The following constitute this Court's

findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

1

I.      FACTS AND TRAVEL OF THE CASE[1]

In 1990, the Debtor purchased a home located at 56 Lyndale Avenue in Methuen, MA (the

"Property") with his former spouse.  In 2000, following his divorce, the Property was transferred

to the Debtor as the sole owner and the Debtor obtained a mortgage on the Property.  By January

2005, the Debtor was experiencing financial difficulties, had fallen behind on his mortgage

payments, and was facing a foreclosure of the Property.  In order to stave off the foreclosure and

the loss of his primary residence, the Debtor entered into a transaction with Equity through which

title to the Property would be transferred to a trust and the trust would pay the approximately

$38,000 in mortgage arrearages to prevent the foreclosure (the "Trust Transaction").

To effectuate the Trust Transaction, the Debtor executed "The 56 Lyndale Avenue Trust,

Trust No. MA200500002" (the "Trust"; "Trust Agreement") and a quitclaim deed transferring title

to the Property to Equity as trustee of the Trust.  The Debtor is the primary beneficiary of the Trust,

holding a 95% beneficial interest.  Ithecus Capital, LLC ("Ithecus") and Equity Trust Company

Custodian FBO Micheal D'Auria IRA ("Equity Trust") each hold 2.5% beneficial interests in the

Trust.

According to the terms of the Trust Agreement and the attached Beneficiary Agreement,

the Trust was to terminate on January 6, 2007, and the term of the Trust could be extended only

by mutual direction of the beneficiaries.  Upon termination of the Trust, the Property was to be

sold, with the Debtor retaining a first right to purchase the Property.  Upon sale, the proceeds were

to be divided according to the "Priority of Distribution of Proceeds at Termination of Agreement"

attached as an exhibit to the Beneficiary Agreement.  Pursuant to the Beneficiary Agreement, from

---

[1] The factual findings contained in this Memorandum are based on trial testimony, the admitted evidence, the parties' stipulation of facts, and the Court's own records. *See LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.),* 196 F.3d 1, 8 (1st Cir. 1999).

the proceeds of any sale, the Trust would pay all encumbrances on the Property, the costs of disposition of the Property, the "Investor Co-Beneficiary Contribution" (to Ithecus Capital and Equity Trust) of $73,696.97, and the "Settlor Beneficiary Contribution" (to the Debtor) of $56,857.44. Any excess proceeds would then be distributed to the beneficiaries based on their percentage ownership of beneficial interests in the Trust. In the interim, the Trustee (Equity) was entitled to monthly installment payments of $81.46. While paragraph 2.a. of the Beneficiary Agreement states that certain "functions," including "the obligation for the expenses and disbursements relative to the property" are delegated to Equity, paragraph 7 of the Trust Agreement provides that "[t]he Trustee shall not be required to advance or to pay out any money on account of this Trust . . . unless the Trustee shall be with sufficient funds or be satisfactorily indemnified."

In connection with the Trust Transaction, the Debtor also executed an Occupancy Agreement, through which Equity, as trustee and landlord, agreed to lease the Property to the Debtor as tenant. Pursuant to the Occupancy Agreement, the Debtor was obligated to pay the sum of $886.16 per month, subject to adjustment, which rental payment included the $81.46 trustee fee, principal and interest on secured claims against the Property, costs of insurance, and property taxes. It was with that rental payment that Equity was expected to pay the expenses of the Property. Amongst other responsibilities, the Occupancy Agreement explicitly provided that it was the Debtor's responsibility to pay any real property taxes or assessments, to maintain full insurance covering the Property, to bear the costs of repairs and maintenance, and to pay all utilities and service charges related to the occupancy of the Property.

It is undisputed that, despite the terms of the Occupancy Agreement, the Debtor never made rental payments to Equity as trustee. Rather, the Debtor continued to make direct payments to the

mortgage company and to directly pay the other expenses related to the Property. A few months after entering into the Trust Transaction, the Debtor again fell into arrears on the mortgage, precipitating the filing of the Debtor's first voluntary petition under Chapter 13 of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code")[2] on July 14, 2005, Case Number 05-44744-JBR (the "Prior Case"). The Debtor's Chapter 13 plan in the Prior Case proposed to pay approximately $6,000 in mortgage arrears, to maintain the mortgage on the Property, and to provide a 10% dividend to unsecured creditors. In addition, the plan stated that the "Debtor also intends to file an Adversary Proceeding to void the transfer of his personal residence into a trust." Chapter 13 Plan, Case No. 05-44744-JBR, ECF No. 15. Equity objected to confirmation of that plan, and, on October 19, 2005, the court entered an order directing the Debtor to file an adversary proceeding against Equity within 3 weeks and indicating that confirmation of the plan would be held in abeyance pending further Court order.

Two months later, in early December 2005, the Debtor filed an adversary proceeding against Equity. However, that adversary proceeding was dismissed in August 2006 for failure to prosecute. Notwithstanding the dismissal of the adversary proceeding, the Debtor's Chapter 13 plan in the Prior Case was eventually confirmed, plan payments were completed, and the Debtor received a discharge. The confirmation order in the Prior Case said nothing of the Debtor's intent to file an adversary proceeding against Equity (which adversary proceeding had by that point been dismissed), nor did it contain any language referring to Equity's interest in the Property or purporting to modify any interest of Equity in the Property.

Years passed and little happened of note. The Property was not sold following the January 6, 2007 Trust termination date, despite the fact that the Debtor, as beneficiary of the Trust, never

---

[2] *See* 11 U.S.C. §§ 101 *et seq.* All statutory references are to provisions of the Bankruptcy Code unless otherwise stated.

agreed to extend the term of the Trust.  Instead, the Debtor continued to reside at the Property and, while the Debtor never paid rent to Equity as contemplated by the Occupancy Agreement, the Debtor continued to pay the expenses related to the Property directly, including the mortgage, real estate taxes, municipal charges, utilities, maintenance, and repairs.  The Debtor testified that he continued to make those payments because he believed he was the sole owner of the Property. And, when the Debtor fell behind on the mortgage payments in 2011, he was able to again avoid foreclosure, this time through a mortgage modification.

In February 2016, Equity sent a letter to the Debtor stating that "[t]he investor beneficiaries have agreed to an extension of the term to allow you the opportunity for the real estate values to appreciate . . . ." Pl. Ex. 6.  While the letter asked the Debtor to contact Equity's attorney, there is no indication that the Debtor did so.  It appears that at all times, Equity was acting at the behest of the other beneficiaries of the Trust in refraining from proceeding with a sale of the Property without any direction or express agreement from the Debtor.

In April 2023, Equity again sent a letter to the Debtor regarding the Trust.  Equity asserted that the Debtor was "well beyond the termination date through forbearance of the Trustee and the other beneficiaries to the Trust who are now rescinding their forbearance." Pl. Ex. 7.  The letter further stated that unless the Debtor communicated with counsel to Equity within 7 days "as to an agreed Closure of the Trust," the Trustee would invoke the "Early Termination, Termination of the Trust and Tenant Default" provisions of the Trust Agreement.

It is unclear exactly what transpired next, but in October 2023, the Debtor filed the currently pending bankruptcy case under Chapter 13 of the Bankruptcy Code (the "Current Case"). In January 2024, Equity moved for relief from the automatic stay of § 362 to continue with a summary process action in the state housing court, representing that Equity had terminated the

5

Debtor's tenancy and served the Debtor with a notice to quit in June 2023.  The Debtor opposed

that motion and filed the present adversary proceeding against Equity in March 2024.

Through the complaint (as amended on April 29, 2024), the Debtor sought a ruling that

would restore title to the Property in the Debtor's name under various legal theories, including a

quiet title action and/or the imposition of an equitable mortgage or constructive trust.  The Debtor

also sought damages under the Massachusetts consumer protection statute and for unjust

enrichment.  This Court dismissed the majority of the Debtor's claims, ruling that (1) the

confirmation of the plan and entry of discharge in the Prior Case did not affect Equity's rights in

or claims to the Property and (2) that the remaining claims, with the exception of the claim for

unjust enrichment as to damages incurred after March 13, 2018, were barred by applicable statutes

of limitation.  The Court denied Equity's motion to dismiss the unjust enrichment claim in part,

allowing the adversary proceeding to move forward with respect to the Debtor's claim for damages

incurred as the result of alleged unjust enrichment within the statute of limitations period (i.e., after

March 13, 2018).[3]

A trial on the Debtor's claim for unjust enrichment (Count IV) was held on April 11, 2025,

at which only the Debtor testified.  At the conclusion of Debtor's testimony, Equity moved for

judgment as a matter of law.

---

[3] Based on the Court's ruling in the adversary proceeding that each of the Debtor's claims to ownership of
the Property were barred by applicable statutes of limitations, the motion for relief from stay in the
underlying case was also granted.

6

II.      POSITIONS OF THE PARTIES

A.  **Availability of the Unjust Enrichment Claim**

With respect to its request for judgment as a matter of law, Equity maintains that the Debtor

cannot recover on the claim for unjust enrichment because the Debtor has (or had) adequate

remedies at law.  Equity reasons that the parties' relationship is governed by two existing contracts

– the Trust Agreement and the Occupancy Agreement.  While the stated term of the Trust expired

on January 6, 2007, Equity says that the provisions of the Trust continue in force, as the Trust

cannot terminate until the corpus of the Trust (the Property) has been distributed.  In addition,

Equity maintains that the Occupancy Agreement continues to govern the Debtor's tenancy in the

Property since, under Massachusetts law, a tenancy that continues beyond a stated lease term

remains governed by the written terms of the lease.  Because the Trust Agreement and the

Occupancy Agreement govern the parties' relationship, Equity contends that the Debtor's unjust

enrichment claim is barred, as the Debtor has adequate remedies at law through claims related to

breach of those agreements.  Equity further argues that, to the extent the Debtor relies on a theory

of unjust enrichment to circumvent the applicable statute of limitations on any claims, the unjust

enrichment claim must fail, since remedies at law *were* available, notwithstanding the current

nonviability of those remedies due to the expiration of the statutes of limitations.

The Debtor says that he should be able to pursue the unjust enrichment claim because the

Court's prior order determining that certain claims were time-barred under applicable statutes of

limitation establishes that the Debtor has no other available remedies at law.  Relying on *Shaulis

v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017), the Debtor says that since certain claims at law

are barred by statutes of limitation, they are not "available" to the Debtor (regardless of their

viability); accordingly, the Debtor should be permitted to seek redress through a claim for unjust

7

enrichment.   The Debtor further maintains there are no available remedies at law because no

contractual provisions of the relevant agreements address the current situation (that is, the alleged

intentional failure of Equity to wind down the Trust and sell the Property on termination).   The

Debtor additionally asserts that a party to an express contract that is otherwise unenforceable may

be entitled to equitable relief.   Finally, the Debtor says that the unjust enrichment claim is not an

attempt to "override" the parties' agreements, because the Trust Agreement and Occupancy

Agreement each terminated in January 2007.

**B. Unjust Enrichment: Substantive Arguments**

In his posttrial brief, the Debtor argues that Equity has been unjustly enriched by the

Debtor's payment of $97,453.91 in expenses related to the Property between March 2018 and

March 2024[4] when it was Equity's, and not the Debtor's, obligation to make those payments.   The

Debtor also asks the Court for an additional award of $156,100, representing the Property's

appreciated value.

The Debtor says that Equity took advantage of the Debtor's confusion or mistaken belief

that the Debtor owned the Property, which belief underlaid the Debtor's willingness to make those

payments.   The Debtor makes much of the fact that at some point, mortgage statements began to

be sent directly to the Debtor notwithstanding that the Trust documents required that the statements

be sent to the Trust.   The Debtor notes that although the agreements required the Debtor to make

rental payments to Equity, those agreements terminated in January 2007 and Equity never

requested rental payments from the Debtor.   The Debtor contends that, in making payments related

to the Property, the Debtor was discharging an obligation that was actually owed by Equity.

---

[4]  According to the Debtor's posttrial brief, those expenses include: (1) $75,292.53 for mortgage payments,
property taxes, and insurance; (2) $10,122.83 for gas; (3) $6,182.43 for electricity; and (4) $5,856.12 in
accrued trustee's fees.  Because the Debtor admits that the trustee fees were never paid to Equity, it is
unclear to this Court why those fees were included in the Debtor's calculation of damages.

8

Relying on *Santagate v. Tower*, 833 N.E.2d 171 (Mass. App. Ct. 2005), the Debtor says that Massachusetts courts have allowed the recovery of payments made by a plaintiff under an unjust enrichment theory even if the plaintiff had a legal obligation to make the payments. In sum, the argument goes, even though the Debtor was legally obligated on the mortgage loan and failed to make rental payments to Equity, Equity contractually agreed to pay the Property expenses; therefore, the payments made by the Debtor unjustly enriched Equity.

The Debtor further argues that, pursuant to Massachusetts law, at the expiration of the Trust term, Equity had a legal obligation to wind up the Trust by selling the Property or to obtain the Debtor's consent to extend the term of the Trust, but neglected to do so. Instead, the Debtor says, Equity intentionally failed to take any steps to wind up the Trust because the other investor beneficiaries wanted to wait for an increase in the Property's value. By failing to wind up the Trust at the expiration of its stated Term, the Debtor contends that Equity breached its fiduciary duty to the Debtor by ensuring that the Debtor bore the costs related to the Property until the market rebounded.

With regard to any accusation by Equity that the Debtor cannot recover based on the doctrine of unclean hands, the Debtor notes that it was the Debtor who prevented the Property from being foreclosed in 2011 and that, without the Debtor's efforts, the Property would not have appreciated in value for Equity's benefit.

In response, Equity maintains that it was the Debtor who breached the Occupancy Agreement at the outset by failing to forward necessary funds to Equity (in the form of rental payments) to pay the expenses of the Property. In fact, according to Equity, the payments that the Debtor seeks to recover under an unjust enrichment theory are payments that the Debtor was otherwise responsible for under the Occupancy Agreement. Essentially, Equity argues, Equity

9

was not unjustly enriched by the Debtor's mortgage, insurance, real estate tax, utilities, and maintenance payments because the Debtor was ultimately contractually bound to make the payments (even though the manner in which he made the payments was in breach of the Occupancy Agreement).  Furthermore, Equity says, the Debtor has benefitted from his continued payment of the Property expenses through his use and occupancy of the Property.

In the alternative, Equity says that, to the extent it was unjustly enriched, it would only have been enriched by 5% of the Debtor's payments for the Property expenses, since the Debtor is the 95% beneficial owner of the Trust and, therefore, will ultimately receive the majority benefit of those payments.  Additionally, Equity notes, the Debtor did not make any trustee payments to Equity and, therefore, cannot recover that amount as part of any unjust enrichment claim.

With regard to the claim for recovery of the Property's appreciated value, Equity argues that those damages are not available because the enrichment was not incurred as the result of any action by the Debtor but was merely a product of market forces, and, since the Property has not yet been sold, no value has been realized by either party.  Moreover, Equity notes, as a beneficiary of the Trust, 95% of the remaining equity in the Property inures to the benefit of the Debtor.[5]

III.   DISCUSSION

A.  Unjust Enrichment and the Availability of Adequate Remedies at Law

Under Massachusetts law, which forms the basis for the Debtor's unjust enrichment claim, "[a]n equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law." *Santagate v. Tower*, 833 N.E.2d 171, 176 (Mass App. Ct. 2005); *see also Fernandes v.*

---

[5] In response to a query from the Court at the trial, Equity also asserts in its posttrial brief that it is entitled to legal fees and costs from the ultimate sale of the Property for Equity's defense of this adversary proceeding. However, the only issue currently before the Court is the Debtor's remaining count for unjust enrichment and the Court takes no position as to whether those fees and costs are recoverable.

10

*Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010). "The term 'adequate remedy at law' refers to the existence of legal (as opposed to equitable) theory by which the plaintiff may seek recovery; it does not, however, require the existence of a legal theory under which the plaintiff is ultimately successful on obtaining a recovery." *Scarpaci v. Lowe's Home Center, LLC*, 212 F. Supp. 3d 246, 253 n.7 (D. Mass. 2016).

As a corollary to that principal, "[o]rdinarily, a claim of unjust enrichment will not lie 'where there is a valid contract that defines the obligations of the parties.'" *Metro. Life Ins. Co. v. Cotter*, 984 N.E.2d 835, 849 (Mass. 2013) (quoting *Boston Med. Ctr. Corp. v. Sec'y of the Executive Office of Health & Human Servs.*, 974 N.E.2d 1114, 1132 (Mass. 2012)). Even if the underlying contractual claim fails, "[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." *Plastic Surgery Assocs., S.C. v. Cynosure, Inc.*, 407 F. Supp. 3d 59, 83 (D. Mass. 2019) (quoting *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017)).

The parties spend much time debating whether claims that are barred by applicable statutes of limitation may essentially be brought by way of a claim for unjust enrichment. The Court found that other claims asserted by the Debtor were based on facts that existed at the inception of the Trust Transaction and the execution of the Trust documents in 2005 and dismissed those claims as barred by the statute of limitations. While the Court disagrees with the Debtor's assertion that an unjust enrichment claim would be permissible if an adequate remedy at law is time-barred, *see Spears v. Miller,* 2006 Mass. App. Div. 151, *3 (Mass App. Div. 2006) (citing *United States v. Buckley,* No. Civ.A. 0011632RWZ, 2005 WL 164287, *1 (D. Mass. Jan. 25, 2005)) ("Even if the limitations period for the legal remedy has expired, an unjust enrichment claim is unavailable to a plaintiff."), that consideration is not relevant to the claim for unjust enrichment currently

11

pending before the Court.  Any unjust enrichment claim for damages incurred prior to March 2018

has already been dismissed as barred by the statute of limitations.   In contrast, through the pending

the unjust enrichment claim, the Debtor seeks damages that were incurred on and after March 13,

2018, *within* the applicable statute of limitations.  Accordingly, the relevant questions for this

Court are (1) whether contractual agreements govern the terms of the parties' relationship, thus

barring an unjust enrichment claim and/or (2) whether there are other adequate remedies at law

that prevent the pursuit of the unjust enrichment claim.

To support the assertion that a breach of contract or breach of trust claim is unavailable to

the Debtor and therefore a claim of unjust enrichment is viable, the Debtor argues that both the

Trust Agreement and the Occupancy Agreement have expired by their terms and, consequently,

the obligations of the parties are not defined by any existing contractual agreement.

With regard to the Trust Agreement, the terms of which would be subject to applicable

nonbankruptcy contract law, *see In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 121 F.4th 280,

311 (1st Cir. 2024) (applying applicable nonbankruptcy contract law to interpretation of trust

agreement); *Ferri v. Powell-Ferri*, 72 N.E.3d 541, 545 (Mass. 2017) ("The rules of construction

of a contract apply similarly to trusts . . ."), even if the stated term of the Trust has expired, the

provisions of the Trust remain in force until the Trust is "terminated" through distribution of the

corpus and the winding down of the Trust.  *See, e.g., Franklin Found. v. Attorney General*, 623

N.E.2d 1109, 1112-13 (Mass. 1993) (citing *Rothwell v. Rothwell*, 186 N.E. 662, 665 (Mass. 1933))

(stating that "a trust, even one of fixed term, generally does not terminate until the corpus is

distributed by the trustees"; although trust had terminated 2 years prior to the Court's decision, the

case was remanded for a declaratory judgment instructing distribution of the trust in conformity

with the codicil of the trust).   Unless and until the Property is sold and any other remaining

obligations under the Trust are performed, the terms of the Trust remain binding on the parties.

Similarly, the terms of the Occupancy Agreement remain binding on the parties and govern

their landlord-tenant relationship notwithstanding the expiration of the stated term.  *See, e.g.,*

*Walker Ice Co. v. Am. Steel & Wire Co.*, 70 N.E. 937, 939 (Mass. 1904) (where a written lease

expired according to its terms and the tenant held over, "the relation of landlord and tenant

continued . . . . In holding over, whether by mutual consent and agreement or otherwise, they held

the same premises with all the rights and privileges that had been annexed to them, and upon the

terms and conditions as specified in the written lease, except so far as modified by mutual

agreement."); *AM Properties, LLC v. J&W Summit Ave., LLC*, No. 13 MISC 479776 AHS, 2015

WL 4064362, *9 (Mass. Land Ct. July 2, 2015) ("where a tenant pursuant to a written lease remains

in possession after the expiration of a lease with clear consent and agreement of the landlord, their

tenancy relationship may be deemed to continue (albeit, technically, in the form of an at-will

tenancy, rather than a tenancy for a specific term) subject to the same terms as set forth in the

expiring lease").

Because the provisions of the Trust Agreement and Occupancy Agreement remain in effect

and govern the obligations of the parties, and because the Debtor's claim of unjust enrichment

rests on an allegation of Equity's breach of those agreements, the Debtor had adequate remedies

at law – namely, contract claims for breach of the Trust Agreement and the Occupancy Agreement.

The Debtor also asserts that Equity breached its fiduciary duty as trustee of the Trust by

failing to timely sell the Property after the termination date.  While it is true that Massachusetts

courts have referred to principles of unjust enrichment in the context of claims for alleged breaches

of fiduciary duty, *see e.g, Brandt v. Hicks, Muse & Co., Inc. (In re Healthco Int'l., Inc.)*, 208 B.R.

288, 311 (Bankr. D. Mass. 1997) ("A claim for unjust enrichment exists against a fiduciary for

breach of fiduciary duty . . . ."), in those cases, the plaintiffs had *actually* brought claims for breach

of fiduciary duty and the courts found that allowing the breaching party to retain profits gained in

violation of fiduciary duties would be unjust.  For example, in *Demoulas v. Demoulas Super*

*Markets, Inc.*, 677 N.E.2d 159, 179 (Mass. 1997), the Massachusetts Supreme Judicial Court (the

"SJC") upheld the lower court's ruling that the "defendants participated in, or benefited from,

improper diversions of corporate opportunities and self-dealing transactions, to the detriment of

[the plaintiffs]."  In determining whether the ordered remedy was appropriate, the SJC stated that

the "judge was correct in choosing to base the[ ] remedies on the principle of preventing unjust

enrichment," *id.* at 195, later stating that "[w]here a corporate fiduciary obtains a gain or advantage

through a violation of his duty of loyalty, a court may properly order restitution of the gain, so as

to deny any profit to the wrongdoer and prevent his unjust enrichment," *id*.  Similarly, in *Tocci v.*

*Tocci*, 189 N.E.3d 241, 248 (Mass. 2022), the jury found that an officer of a corporation "violated

his fiduciary duties to the corporation and converted the corporation's assets for his own benefit."

The SJC again discussed principles of unjust enrichment in determining the amount for which the

defendant should be liable for the breach of fiduciary duty.  *Id.* at 257.  In other words, the SJC

has found that principles of unjust enrichment informed the *remedy* that would be imposed based

on the successful prosecution of underlying breach of fiduciary claims.

The Debtor further relies on *Kelley v. CVS Pharmacy, Inc.*, No. 98-0897-BLS2, 2007 WL

2781163, *13 (Mass. Super. Ct. Aug. 24, 2007) for the general proposition that "the law does not

wish a fiduciary to enjoy personal financial gain from his breach of fiduciary duty."  However, the

Debtor did *not* file a claim for breach of fiduciary duty against Equity, and the Court has not been

14

tasked with determining whether any breach of fiduciary duty occurred.  Instead, the Debtor seeks

damages only under an independent theory of unjust enrichment.

In fact, the Debtor's reliance on breach of fiduciary duty cases elucidates the fact that the

Debtor had a variety of remedies at law available in seeking redress for the Debtor's alleged harm

that were not barred by applicable statutes of limitation.  The legal theories of liability cited by the

Debtor in support of the unjust enrichment claim make clear that claims for breach of contract,

breach of trust, breach of fiduciary duty, or sanitation code violations[6] could have provided

adequate remedies at law within the applicable statute of limitations period, but the Debtor failed

to pursue any of those remedies.  Accordingly, this Court finds and rules that the Debtor cannot

recover under a theory of unjust enrichment due to the existence of those adequate remedies at

law, and, therefore, Equity is entitled to judgment on Count IV as a matter of law.

## B.  Unjust Enrichment Standards Applied

Even if the Debtor was not precluded from bringing a claim for unjust enrichment, the

Court could not find that Equity has been unjustly enriched to the detriment of the Debtor based

on the facts of this case.  Generally speaking, "[u]njust enrichment is defined as "retention of

money or property of another against the fundamental principles of justice or equity and good

conscience.'" *Santagate*, 833 N.E.2d at 176 (quoting *Taylor Woodrow Blitman Const. Corp. v.*

*Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass. 1982)).  "To succeed on a claim for

unjust enrichment, a plaintiff must show (1) a benefit conferred upon defendant by plaintiff, (2) an

---

[6] Substantively, the Debtor's argument that Equity's failure to pay certain utility expenses because that
failure violated Massachusetts's sanitary code is not well taken.  "The State sanitary code protects 'the
health, safety, and well-being of occupants and the general public' by requiring the owner of a dwelling to
provide water, sewer, and gas or electricity *absent a written agreement for them to be provided by the
occupant.*" *133 W. Main St. Realty, LLC v. Kimball*, 252 N.E.3d 485, 491 (Mass. App. Ct. 2025) (emphasis
supplied) (quoting 105 Code Mass. Regs. §§ 410.001(A), 410.130(C)(3), 410.200(A)(2) (2023)). The
Occupancy Agreement signed by the Debtor clearly states that the Debtor "is responsible for payment of
all utilities and service charges related to occupancy of the [Property]."  Pl. Ex. 1, 23 ¶ 20.

appreciation or knowledge by defendant of the benefit, and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value." *Scarpaci*, 212 F. Supp. 3d at 253.   Overarching the entire determination is the admonition that "Massachusetts courts emphasize the primacy of equitable concerns in a finding of unjust enrichment . . . ." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009).

While the Debtor is correct that the mere fact that he was personally obligated on the mortgage is not a bar to a claim for unjust enrichment, *see Santagate*, 833 N.E.2d at 176 (quoting Restatement of Restitution § 76 (1937)) ("A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other . . . ."), "[n]ot every conferral of a benefit . . . automatically give[s] rise to claims for unjust enrichment." *Fernandes*, 731 F. Supp. 2d at 114 (quoting *Motorsport Eng'g, Inc. v. Maserati SPA*, 316 F.3d 26, 31 (1st Cir. 2002)).   Instead, a plaintiff must demonstrate "not only that the defendant received a benefit, **but also that such a benefit was unjust**." *Cotter*, 984 N.E.2d at 850 (emphasis supplied).   In determining whether a benefit is unjust, the Court must look to the "reasonable expectations of the parties." *Bonina v. Sheppard*, 78 N.E.3d 128, 132 (Mass. App. Ct. 2017) (*quoting Cotter*, 984 N.E.2d at 850); *see also Global Inv. Agent Corp. v. Nat'l Fire Ins. Co. of Hartford,* 927 N.E.2d 480, 494 (Mass. App. Ct. 2010); *Community Builders, Inc. v. Indian Motocycle Assocs., Inc.,* 692 N.E.2d 964, 979 (Mass App. Ct. 1998).

In arguing the equities of this case, the Debtor has repeatedly emphasized the Debtor's alleged unawareness of the structure of the Trust Transaction and the fact that the Debtor believed that he retained ownership of the Property at all times.   That belief, however sincere, is not

16

objectively reasonable.[7] The documents signed by the Debtor were clear that title to the Property

would be transferred to the Trust, that the Debtor would be living as a tenant in the Property, and

that the Property would ultimately be sold, with the proceeds eventually distributed in accordance

with the Trust documents. While the Debtor says that he either did not fully read or did not fully

comprehend the substance of the documents he signed, "in the absence of fraud, not here alleged,

a person who signs a written agreement is bound by its terms whether he reads and understands

them or not." *Tiffany v. Sturbridge Camping Club, Inc.*, 587 N.E.2d 238, 240 n.5 (Mass. 1992)

(citing *Spritz v. Lishner,* 243 N.E.2d 163, 164 (Mass. 1969)).

In addition, based on the documents executed in connection with the Trust Transaction, the

reasonable expectation of the parties was that the Debtor would ultimately bear the burden of

maintaining the expenses related to the Property, including the mortgage payments, real estate

taxes, insurance, general upkeep, and utilities, through payment of rent. While the documents

anticipated that those payments would be made by Equity and not by the Debtor directly, the

Occupancy Agreement made clear that those costs would be borne by the Debtor by way of rental

payments to Equity.

Other considerations also lead this Court to conclude that Equity was not *unjustly* enriched

by the Debtor's payment of the Property expenses. The Court cannot find that any enrichment to

Equity was to the detriment of the Debtor on equitable grounds, as the Debtor benefited from the

payment of those expenses both by retaining possession of the Property at the time the payments

were made, *see, e.g., Bonina,* 78 N.E.3d at 133 (award of damages under theory of unjust

---

[7] While the Debtor professes ignorance as to the nature of the Trust Transaction and confusion or mistaken belief regarding his ownership of the Property, the Court notes that the Debtor's Chapter 13 plan (and adversary proceeding) filed in the Prior Case indicates that the Debtor had some inkling of the consequences (the loss of title to the Property) that attended his execution of the Trust Transaction documents as early as September 2005.

enrichment did not account for mortgage payments made by plaintiff, as those payments represented plaintiff's use and occupancy of the residence), and, after the sale of the Property pursuant to the Trust Agreement, the Debtor will benefit from the increase in the value of the Property over time due to the Debtor's 95% beneficial interest in the Trust.


IV.    CONCLUSION

The Court is not unsympathetic to the Debtor, who credibly testified that he purchased the Property to be close to his parents while entering a new married and family life. The Court credits the Debtor for the efforts the Debtor has made in maintaining and retaining the Property despite financial hardship. But this Court is constrained by the documents signed by the Debtor and by existing law from granting the Debtor the relief he seeks. For the reasons discussed above, the Court finds and rules that the Debtor is precluded from seeking damages under a theory of unjust enrichment in light of the existence of adequate remedies at law. And, even if the unjust enrichment claim would otherwise be available, the Court finds, based on the reasonable expectations of the parties, that any enrichment in Equity's favor is not unjust. Accordingly, the Court will enter judgment in favor of Equity. A judgment in conformity with this memorandum will issue forthwith.


DATED: July 2, 2025                    By the Court,

_____
Elizabeth D. Katz
United States Bankruptcy Judge

18